**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SOUTHERN CALIFORNIA RENTAL HOUSING ASSOCIATION, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> COUNTY OF SAN DIEGO; BOARD OF SUPERVISORS OF THE COUNTY OF SAN DIEGO; DOES, 1 through 20 inclusive, <br><br> Defendants-Appellees, <br><br> ALLIANCE OF CALIFORNIANS FOR COMMUNITY EMPOWERMENT ACTION, <br><br> Intervenor-Defendant-Appellee. | No. 21-55798 <br><br> D.C. No. 3:21-cv-00912-L-DEB <br><br> MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted February 9, 2022
Submission Vacated February 14, 2022
Resubmitted November 7, 2022
Pasadena, California

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: SCHROEDER, TALLMAN, and LEE, Circuit Judges.
Dissent by Judge LEE.

This is an appeal from the denial of a preliminary injunction. Appellants, the Southern California Rental Housing Association ("SCRHA") sought to block enforcement of a San Diego County Ordinance, enacted in response to COVID-19, that imposed a moratorium on specific residential evictions. Ordinance 10724 was set to go into effect June 3, 2021, and expire 60 days after the governor lifted all COVID-related stay-at-home and work-at-home orders. According to the findings enumerated in the text of the Ordinance, the County acted when it did because the state protections had proven ineffective and were set to expire.

The governor lifted the stay-at-home and work-at-home orders on June 11, 2021. The Ordinance therefore expired August 10, 2021, and was in effect only 68 days. SCRHA had sued to enjoin the Ordinance in June, and while the district court acted promptly, the Ordinance expired six months before we heard the appeal. We deferred submission pending this Court's decision in *Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) (en banc), and received supplemental briefing. We now conclude there is nothing to enjoin. We agree with the County that the case is moot and no exception to mootness applies.

2

SCRHA argues that this is the type of matter that is capable of repetition yet evading review. Its argument assumes an ordinance like this one could be reenacted. Yet the circumstances have changed markedly in the last eighteen months. The economy has rebounded, unemployment is low, and vaccines are widely available. Our most recent case dealing with temporary COVID-related restrictions is *Brach v. Newsom*, 38 F.4th 6 (9th Cir. 2022) (en banc). We there held in similar circumstances that the case was moot because there is no reasonable expectation that the government would take similar action again. *Id.* at 15.

Of course, this case differs from *Brach* in that we do not have an express declaration from the County that it will not reenact the Ordinance, but as the en banc court explained in *Brach*, "[t]he test is 'reasonable expectation,' not ironclad assurance." *Id.* at 15. Moreover, the other indicia of mootness in *Brach* are all present here. There is no longer a live controversy and this panel cannot grant any effective relief because the Ordinance expired by its own terms. The voluntary cessation exception therefore does not apply. As to the applicability of the capable of repetition yet evading review exception, the material facts are remarkably the same.

The appeal is dismissed as moot. Appellant's Motion to Take Judicial Notice of Exhibits A-D (Dkt. No. 11) and Appellee's Motion to Take Judicial

Notice of SANDAG Report, Board Meeting Minutes, and Superior Court Order (Dkt. No. 19) are DENIED.

**DISMISSED.**

FILED

NOV 9 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

21-55798 – *Southern California Rental Housing Association v. County of San Diego*

LEE, Circuit Judge, dissenting.

In May 2021, it appeared that the COVID-19 pandemic would fade away: Infections, hospitalizations, and deaths plummeted from earlier highs, as vaccines became widely available. Clinical trials also suggested that vaccines would prevent infections in over 90 percent of cases. And breakthrough infections and Greek-letter variants had yet to enter the pandemic parlance. The economic outlook brightened as well. The economy roared back with businesses reopening, unemployment rate plunging, and GDP growth surging.

Yet amid this optimism, San Diego County barred landlords from evicting tenants, citing its emergency powers to combat COVID-19's impact. This moratorium later ended under a sunset provision (while this appeal was pending) when California revoked its shelter-in-place order. The County now argues—and the majority agrees—that the case is moot because the moratorium has expired.

I respectfully dissent because, under the capable-of-repetition-yet-evading exception, there is a reasonable expectation that this controversy will recur. *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016). The County did not pass this moratorium in 2020 when the public health and economic outlook were dire. Rather, it took this sweeping action in May 2021—when it appeared the pandemic was behind us—raising the possibility that the County used COVID-19 as

a pretext to pursue other political ends under the cover of emergency powers. And the County might very well do it again: It refuses to relinquish its emergency powers and has not sworn off enacting a similar moratorium in the future. Given that backdrop, it would not be surprising if the County were to reimpose the moratorium if, for example, another variant emerges or the economy faces headwind.

\* \* \* \*

The burden to show a "reasonable expectation" of repetition is "not a very demanding one." *Barilla v. Ervin*, 886 F.2d 1514, 1519-20 (9th Cir. 1989), *overruled on other grounds by Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996). The standard is "whether the controversy [is] capable of repetition and not . . . whether the claimant ha[s] demonstrated that a recurrence of the dispute [is] more probable than not." *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988).

Our *en banc* decision in *Brach v. Newsom* focused on two key factors in assessing whether a COVID-19 restriction—school closures in that case—was likely to recur. 38 F.4th 6, 13-14 (9th Cir. 2022) (en banc). First, we looked at whether the government retains the authority to reimpose the challenged restriction. Second, we analyzed whether circumstances had changed since the policy was passed or repealed, making the policy likely to be enacted again.

In *Brach,* the *en banc* court recognized that "the Governor's continuing authority to close schools is a consideration in our analysis." *Id.* at 14. But it held that the school closures would not likely recur because the governor made clear that

he would not exercise that authority. It noted that, "[m]ost importantly, the State ha[d] 'unequivocally renounce[d]' the use of school closure orders in the future," and this assurance was backed up by "the legislature's statutory enactments, policy statements, and structured financial incentives" that "entrench[ed] the State's commitment to reopening schools." *Id.* at 13 & n.6.

The *Brach* court also held that circumstances had changed since the state lifted its in-school restrictions in July 2020, making it far less likely that the government would have a reason to close schools again. *Id.* at 14. At the time schools closed in early 2020, COVID-19 cases surged across the state—and there were no vaccines or therapeutic treatments at the time. But now, the "availability of vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances." *Id.* Indeed, it turned out that in 2020 we knew little of how the virus transmitted. *Cf. California Health Officials Announce a Regional Stay at Home Order Triggered by ICU Capacity*, Off. of Governor Gavin Newsom (Dec. 3, 2020), https://www.gov.ca.gov/2020/12/03/california-health-officials-announce-a-regional-stay-at-home-order-triggered-by-icu-capacity (ordering shutdown of outside playgrounds).

The facts of our case are diametrically opposite from those in *Brach*. First, the County has not relinquished its emergency powers. And, unlike in *Brach*, the County has not assured us that it would not invoke those powers again to reimpose

an eviction moratorium. As a practical matter, school closures will not likely happen again (as *Brach* recognized) because of the intense and overwhelming public backlash against that policy's detrimental effect on student performance. *See, e.g.*, Nat'l Assessment of Educ. Progress, *Reading and Mathematics Scores Decline During COVID-19 Pandemic*, The Nation's Rep. Card, https://www.nationsreportcard.gov/highlights/ltt/2022 (reporting the first ever decline in math test scores and the largest decline in reading test results in over three decades). But there does not appear to be a similar public opposition to an eviction moratorium, which is perhaps why the County refuses to shut the door on that option.

Second, there are no changed circumstances that make the eviction moratorium unlikely in the future. The school closures in *Brach* occurred early in the pandemic, and the advent of vaccines and treatments, along with better understanding of the virus' transmission and its impact on children, made future school closures unlikely.

But here, the County enacted the Ordinance in *May 2021*—fourteen months after the County had declared an emergency. By that time, the COVID-19 vaccine had become widely available in the County, and COVID-19 cases had plummeted from earlier highs. It was also believed at the time (based on clinical trial results) that vaccines prevented *infections* in over 90% of cases. And the economy was strongly rebounding: unemployment was the lowest that it had been since the

pandemic began, and real GDP grew by 6.7% in the second quarter of 2021.

If anything, the case for an eviction moratorium is stronger *today* than in May 2021 when the County enacted the eviction moratorium. Today, COVID-19 cases are higher than in May 2021 (4.5 case rate on May 1, 2021 vs. 15.5 on September 2022, and daily count of 96 in May 2021 vs. 460 in September 2022). We also now know that vaccines protect against serious illnesses but that breakthrough infections are fairly common among the vaccinated. And, unlike in May 2021, we now recognize the reality of ever-mutating COVID-19 variants. Finally, unlike the economic growth and optimism of early 2021, there are potential clouds in the economic skyline.

We face a law passed by a government that has done little to explain why it wielded its emergency powers the first time and nothing to assure that it will not use those same powers again.[1] A reasonable expectation thus exists that the County will reimpose an eviction moratorium if political winds change or the economy faces headwind. I do not believe this case is moot.

I thus respectfully dissent.

---

[1] At least one other California city has done this already. *See City Council Approves Temporary Eviction Moratorium for Rent-Controlled Tenants Facing Rent Increases Starting September 1*, City of Santa Monica (Aug. 24, 2022), https://www.santamonica.gov/press/2022/08/24/city-council-approves-temporary-eviction-moratorium-for-rent-controlled-tenants-facing-rent-increases-starting-september-1.